## PORTER v. REED *et al.*, *Plaintiffs in Error.*

### Division Two, June 26, 1894.

1. **Land**: BILL OF PEACE: QUIETING TITLE. Where plaintiff's grantors recovered in ejectment and plaintiff had been in possession many years and defendants brought another ejectment and dismissed it and now threaten to begin another suit, a bill in equity will lie on plaintiff's behalf to quiet the title.

2. ——: ——: ——: MARRIED WOMEN. Married women are proper parties defendants in such suit and the decree of the trial court is binding on them, notwithstanding their coverture.

3. ——: ——: ——: EQUITY: JURISDICTION. The fact that the only issue between the parties as to the title to the land is that of the legitimacy of the defendants as heirs of the common grantor does not prevent a court of equity from giving relief on a bill to quiet title.

*Error to Jackson Circuit Court.*

AFFIRMED.

*Beardsley & Gregory* for plaintiffs in error.

(1) To quiet title by the remedy of a bill of peace, the plaintiff must first have established his right to the property by repeated trials at law. *Sutton v. Dameron,* 100 Mo. 150; *State v. Sioux City,* 7 Neb. 375; *Collins v. Collins,* 19 Ohio St. 468; *Thompson v. Engle,* 4 N. J. Ch. Rep. 276; *Patterson v. Jersey City,* 1 Stockton (9 N. J. Eq.), 434; *West v. Mayor,* 10 Paige, 540. (2) The repeated bringing of suits which are dismissed is not enough to warrant a court of equity in interposing its power of injunction. *Patterson v. McCamant,* 28 Mo. 210; *Marmaduke v. Railroad,* 30 Mo. 545; *Knowles v. Inches,* 12 Cal. 212; *Bond v. Little,* 10 Ga. 395; *Gunn v. Harrison,* 7 Ala. 585. (3) In order to maintain a bill of peace the action sought to be enjoined must be such

an one as can be then brought; "there must be a claim of present right capable of being enforced by action." *Collins v. Collins*, 19 Ohio St. 468. (4) The petition in this case is in the nature of a bill of peace. It seeks to enjoin the defendants from suing in ejectment. Those of the defendants who are married women, as shown by the record, namely, Eliza Jane Reed, Martha K. Witcher, and Fannie Fitlingberger, by reason of their coverture, had neither the right of possession of the lands in question nor the power to sue to recover· the same. *Dyer v. Wittler*, 89 Mo. 81; *Kanaga v. Railroad*, 76 Mo. 207; *Gray v. Dryden*, 79 Mo. 106; *Cooper v. Ord*, 60 Mo. 420; *Mueller v. Kaessmann*, 84 Mo. 318; *Bledsoe v. Simms*, 53 Mo. 308. (4) The married woman's act (see sec. 3295, R. S. 1879), does not alter the common law relations of husband and wife in this respect. His possession is her possession, and he is the proper and only party to be made plaintiff or defendant in a suit for land claimed to belong to her. *Bledsoe v. Simms*, 53 Mo. 308; *Rust v. Goff*, 94 Mo. 519.

*M. Campbell* for defendant in error.

(1) This baseless claim is a cloud on the title of John Porter. 2 Am. and Eng. Encyclopedia of Law, 298. *Lick v. Ray*, 43 Cal. 83. (2) The statement shows his case to be entirely free from doubt. 2 Story's Eq. Jur., sec. 857. *Eldridge v. Hill*, 2 Johns Ch. 281. (3) "The present is not strictly a bill of peace. Its object is not to quiet a title supported by a single verdict at law, but its object is to prevent a multiplicity of actions, equally vexatious and oppressive to both parties, by asking the aid of a court of chancery to have the title tried under its superintendence so that there may be a final decision. And when a bill is

brought on this ground of preventing a multiplicity of vexatious suits at law, the question as to the number of verdicts obtained does not arise." Kent, C. J., in *Huntington v. Nicoll*, 3 Johns. 602. (4) This is an equitable suit to quiet a particular claim of title. That claim is the wife's claim, in the instances complained of. No other person can make this claim for her, and she is a necessary party to any adjudication of the demand of the petition. Now a wife can be sued for her tort at law even. *Merrill v. St. Louis*, 83 Mo. 244. (5) And a wife can be sued in equity, and a decree go against her estate. *Staley v. Ivey*, 65 Mo. 74; *Pratt v. Eaton*, 65 Mo. 157; *Morrison v. Thistle*, 67 Mo. 596. (6) Her title to real estate can only be divested by proceedings in equity. *Clark v. Rynex*, 53 Mo. 380. Here is full jurisdiction over both person and subject-matter, and the judgment binds her. *Wagner v. Ewing*, 44 Ind. 441; *Childress v. Taylor*, 33 Ala. 185; *Lewis v. Gunn*, 63 Ga. 542; *Vick v. Pope*, 81 N. C. 22; *Kennard v. Sax*, 3 Ore. 263.

GANTT, P. J.—On the twenty-first of March, 1889, John Porter brought his action returnable to the April term, 1889, of the circuit court of Jackson county, Missouri, against Eliza J. Reed and Jasper Reed, her husband, Martha A. Witcher and Tandy K. Witcher, her husband, Fanny Fitlingberger and Jacob Fitlingberger, her husband, Mary Miller and George W. Miller.

His petition, omitting the caption, was in the following words:

"Plaintiff states that he is the owner of, and entitled to the possession of, and is actually in possession of, the following described land in Jackson county, Missouri, to wit, the west half of the northeast quarter of section seven (7), township forty-nine (49), range thirty-two (32). Also part of the east half of the

northeast quarter of said section seven (7), township forty-nine (49), range thirty-two (32), described as follows: Beginning at the northwest corner of said last mentioned half quarter, thence running east to the northeast corner of the northeast quarter of said section seven (7), thence south forty poles, thence west to the west line of said east half of the northeast quarter of said section seven (7), thence north forty poles to the beginning, containing twenty acres and being the north twenty of the east half of the northeast quarter of section seven (7), township 49, range 32.

"Also a part of the northwest quarter of said section 7, township 49, range 32, bounded as follows: Beginning at the northeast corner of the northwest quarter of said section 7, thence running south eighty ·poles, thence north, $67\frac{1}{2}$ degrees west, forty (40) poles to a corner on the east bank of the Big Blue river, thence down on said Big Blue river to its intersection with the north line of said section 7, thence east to the beginning, containing about ten acres.

"Plaintiff states that he has been continuously in the adverse possession and ownership of said land since March 4, 1872, under the following deeds, to wit:

"A warranty deed dated January 12, 1872, recorded March 4, 1872, in book 93, page 578, in the recorder's office, at Independence, Missouri, executed by Hiram Miller, Henry C. Miller, James W. Miller, John D. Miller, Ann Collin, John F. Collin by J. Brown Hovey and George W. Buchanan their attorneys in fact.

"A deed from Alfred J. Galbraith by George W. Buchanan, his attorney in fact, dated also January 12, 1872, and recorded on March 5, 1872, in book 88, page 578, of the records of Jackson county at Independence, Missouri.

"A deed from James A. Etter and wife, Mary Jane, dated January 18, 1873, and recorded March 3, 1873, in book 105, page 400, of the records of Jackson county at Independence, Missouri.

"Plaintiff states that by said deeds he obtained the entire title to said lands and avers that in the year 1858 all the title and the actual possession of said land was vested in one Henry Miller; that said Henry Miller died in said year, 1858, or in January, 1859, and that he left no will; that at his death he left as his heirs his widow Elizabeth Miller and his children, Hiram Miller, Henry C. Miller, James W. Miller, John D. Miller and Ann Miller.

"That George W. Buchanan administered on the estate of said Henry Miller, deceased, and settled said estate without disposing of said land; that at the death of said Henry Miller one Fanny Russell, who was living with said Henry Miller in his lifetime as his housekeeper was left in occupancy of said land; that said Fanny Russell had with her on said land defendants Eliza Jane Reed, known then as Eliza Jane Miller, Martha Ann Witcher, then known as Martha Ann Miller, Fannie Fitlingberger, then known as Fanny Miller, Henry Miller, and George W. Miller; that Eliza Jane Miller afterwards, in 1867, was the wife of one Henry Akers, Martha Ann Miller was in 1867 wife of Tandy K. Witcher, and Fanny Miller was in 1867 wife of Jacob Fitlingberger; that said defendants were the children of said Fanny Russell and they remained with their mother on said land during the troubled times of the civil war in actual occupancy of said land; that after the war and in 1867 said Hiram Miller, Henry C. Miller, James W. Miller and Ann Weatherby, formerly Ann Miller brought suit in ejectment against said Fanny Russell and her said children Eliza Jane Akers by the name of Jane Akers, and her

husband Henry Akers, and Fanny and Jacob Fitling-berger, her husband, Martha Ann and Tandy K. Witcher, her husband, and Henry and George W. Miller; that said suit was brought in the circuit court of Jackson county, at Independence, and was numbered on the dockets of said court as 7380.

"That afterwards on the thirtieth day of September, 1869, said cause came on to be heard before a jury who found the issues for the plaintiffs and judgment was duly rendered thereon, and is of record in record O, page 514, of the circuit court records at Independence, Missouri, awarding said lands to said plaintiffs, Hiram Miller, Henry C. Miller, James W. Miller, John D. Miller and Ann Weatherby, and affirming their title to the possession thereof; that on said judgment said parties were accordingly put into possession of said lands; that said Ann Weatherby then married one John F. Collin; that plaintiff by the deeds aforesaid, came into ownership of all the title of said parties in and to said lands; that defendants never made any pretense of claim to said land from the time plaintiff bought and took possession thereof till the twenty-second day of September, 1887, when they sued plaintiff in ejectment, claiming title to said lands; that said Eliza Jane, had in the mean time got rid of said Henry Akers and had married Jasper Reed; that said case was brought in the circuit court of Kansas City, Missouri, and was numbered 10606 in said court; that plaintiff was put to heavy expense in employing attorneys and preparing to defend said cause; that, nevertheless, on the day when said cause was set down for trial, defendants dismissed their said cause without trial; that afterwards on the fifteenth day of August, 1888, defendants again sued plaintiff in ejectment for eighty acres of said land in the circuit court of Jackson county, Missouri, at Inde-

pendence, Missouri, which case was numbered on the docket of said court as 1827; that plaintiff was again put to heavy expense in employing attorneys to defend said cause and in procuring depositions and witnesses from many parts of the country; that on the eighteenth day of March, 1889, said cause was called for trial and defendants again dismissed said cause without a trial; that the defendants threaten to again sue plaintiff for possession of said lands, unless he will make to them what they call a 'fair proposition' to buy from them a quitclaim of their alleged rights in and to said lands; that defendants mean thereby that plaintiff must either consent to pay them a large sum of money for their worthless deed to said land or they will continue to harass him with vexatious and inconsequent litigation, such as the two cases which they have already brought and dismissed as above set forth.

"And plaintiff avers that the sole claim of defendants to any right, title or interest in said lands arises from the facts, to wit:  That on or about the year of 1835, their mother, the said Fanny Russell, eloped from Lee county, Virginia, with the said Henry Miller, deceased, and with said Henry Miller came upon these lands and there lived as the mistress and housekeeper of said Henry Miller, until his death in 1858, as aforesaid, and defendants claim to be the children of the illegitimate and adulterous commerce between said Henry Miller and said Fanny Russell during the time they so lived together on said lands.

"Their claim is entirely grounded on their assertion that they are the lawful heirs of said Henry Miller by reason of said illegimate and adulterous intercourse of their said mother, Fanny Russell, with said Henry Miller.  Plaintiff states that Elizabeth Miller, the true and lawful wife of the said Henry Miller, deceased, was

married to said Henry Miller in Ashe county, North Carolina, in the year of 1818 or 1819, by a magistrate named Andrew McMillan or McMillen, that she lived with said Henry Miller as his acknowledged wife from that time until he eloped as aforesaid with said Fanny Russell; that she bore him the said children through whom plaintiff claims his title to said lands; and that she survived said Henry Miller several years and died in 1863.

"And plaintiff avers that said Fanny Russell is also dead and avers that said Fanny was not and did not claim to be the lawful wedded wife of said Henry Miller, but that she, on the contrary, by her true name of Fanny Russell, after the death of said Henry Miller, filed against his estate her account and claim for the sum of $4,263.28, as a balance due her from said estate, her said account being charges for animals, for money loaned, for money used by said Henry, for interest thereon and for nineteen years services as housekeeper $1,500; that said account was presented by her to the probate court of Jackson county, at Independence, Missouri, through her attorneys Jones and Pitman, and was filed December 19, 1860, but that no allowance was made thereon; that in said suit in ejectment No. 7380, filed by Hiram Miller *et al.* against said Fanny and defendants, her children, in 1867, she was sued and judgment went against her as Fanny Russell; that in said cause No. 7380 the sole issue tried was the legitimacy of said Hiram, Henry C., James W. and John D. Miller, and Ann Collin, and that said issue was settled against said defendants and their mother, Fanny Russell, and in favor of said children of Henry and Elizabeth Miller; that in said case said Hiram Miller had procured the deposition of said Andrew McMillan, the magistrate who married said Henry and Elizabeth Miller in 1818 or 1819, as aforesaid, and had procured

numerous other depositions, conclusively establishing the fact of such marriage; that all these depositions with the other papers in the case No. 7380 were on file in the office of the circuit court at Independence until shortly before defendants brought their first suit in ejectment against plaintiff as hereinbefore mentioned, but shortly prior to the bringing of that suit, all the papers in said case No. 7380, disappeared from said clerk's office, and neither plaintiff nor the clerk of said court, nor plaintiff's attorneys have been able to find them after diligent search. And plaintiff avers that in 1819, in North Carolina, no records of marriages were kept; that Andrew McMillan is dead; that all the witnesses of said marriage of Henry and Elizabeth Miller are dead; that the witnesses of their family relations and of the fact that said Henry Miller publicly lived with said Elizabeth and raised said family as his legitimate and acknowledged family, are all old and many of them dead, as are also many of those who knew of and can testify to the elopement of said Fanny Russell with Henry Miller; that said testimony, already reduced largely in volume, will soon be altogether lost; that the expense of getting together such testimony becomes greater with each succeeding year.

"And plaintiff avers that by their suits brought and dismissed in the vexatious and harassing manner before mentioned and the suspicion thereby engendered, the defendants have succeeded in casting a cloud upon the title of plaintiff, and have made it difficult to sell the land and made it less valuable as a security for borrowing money and have depreciated its market value.

"And plaintiff avers that defendants still threaten to further sue and annoy plaintiff with their aforesaid baseless and groundless action and claim of title and to further involve him in expense and to further shake

public confidence in his title thereby, for all which injuries plaintiff has no sufficient or adequate remedy at law and none at all unless this court, sitting as a court of equity, shall by its judgment and decree afford him relief.

"Wherefore plaintiff prays judgment that the defendants be forever barred and estopped and enjoined from holding any title, right or claim in or to said lands on the ground that they are the lawful heirs of Henry Miller, deceased, that they be prohibited and enjoined from instituting or prosecuting any further suit against plaintiff or his grantees of said land and as such heirs and that the title of plaintiff be quieted in this respect and for any further and additional relief as this court by the exercise of its equity powers can give."

At the same time plaintiff filed the following affidavit of nonresidence.

"STATE OF MISSOURI, ⎱ ss.
"County of Jackson. ⎰

"Milton Campbell being duly sworn on his oath says that Martha A. Witcher and Tandy K. Witcher, Fanny Fitlingberger and Jacob Fitlingberger are nonresidents of the state of Missouri and reside in the state of Kansas.

"MILTON CAMPBELL.

"Subscribed and sworn to before me by Milton Campbell, this twelfth day of April, 1889.

"L. F. McCoy, Clerk.

"D. M. McCLANAHAN, D. C.

"(Endorsed, omitting title of cause.)

"Filed March 21, 1889.

"L. F. McCoy, Clerk.

"D. M. McCLANAHAN, D. C."

Personal service was duly made on the defendants Henry Miller, George W. Miller, Eliza J. Reed and

Jasper Reed in Jackson county, and a *non est* return as to the others. At the April term, 1889, proof of service in Johnson county, Kansas, by delivering a copy of the summons and petition, to each, was made as to defendants, Martha and Tandy Witcher, Fanny and Jacob Fitlingberger, as required by law in such cases, and default noted, as to all of said defendants.

Afterwards at the October term, 1889, the following decree was rendered in said cause, October 28, 1889, omitting style of case:

"Now, at this day, comes plaintiff by his attorney, but defendants although lawfully summoned come not, have filed no answer or neither pleadings in this case and are in default; and it appearing in the petition that plaintiffs have been continuously since March 4, 1872, in the adverse possession and ownership of the following described land in Jackson county, Missouri:

"That plaintiff by virtue of certain deeds mentioned in the petition on March 4, 1872, came into ownership of all the title of Hiram Miller and Ann Weatherby, in and to said lands, also, Henry C. Miller, James W. Miller and John D. Miller, and then took possession thereof; that said Hiram J. Miller, Henry C. Miller, James W. Miller, John D. Miller and Ann Weatherby, were the lawful children and sole legal heirs of Henry Miller and Elizabeth Miller his wife, who are both dead; that said Henry Miller died intestate in the year 1858 and was then in possession and entitled to said lands; that said Elizabeth Miller died in the year 1863; that about the year, 1835, the said Henry Miller abandoned his said wife and eloped with Fannie Russell, and purchased and came into possession of the land aforesaid and there lived with said Fannie Russell and kept her as his mistress and housekeeper, until his death in 1858; that Eliza J. Reed, Martha A. Witcher, Fannie Fitlingberger,

Henry Miller and George Miller, were the illegitimate children of said Henry Miller and Fannie Russell; that Jasper Reed is the husband to Eliza J. Reed; that Tandy K. Witcher is husband to Martha Witcher and Jacob Fitlingberger is husband to Fanny Fitlingberger; that said defendants with their mother Fanny Russell were sued in ejectment for the possession of said land in 1867 at Independence, Missouri, by said Hiram Miller, Henry C. Miller, James W. Miller, John D. Miller and Ann Weatherby, and on a trial, therein wherein the sole issue was the legitimacy of the last named persons; a judgment of ejectment was on September 30, 1869, rendered against said defendants and in favor of said plaintiffs, and said Hiram Miller, James W. Miller, John D. Miller and Ann Weatherby, were on such judgment put in possession of said property.

"The said defendants never made any pretense of claim to said land from the time the plaintiff bought and took possesion thereof as aforesaid until the twenty-second day of September, 1887, when they sued plaintiff in ejectment claiming title thereto. That said suit was brought in the circuit court of Jackson county at Kansas City, Missouri, and was numbered 10606, and after the plaintiff had been put to heavy expense preparing for trial to defend the same, the defendant on the day of the trial dismissed the suit. That on the fifteenth day of August, 1889, the defendants again sued the plaintiffs in ejectment in the circuit court of Jackson county, Missouri, at independence in case numbered 18237, claiming said land.

"That plaintiffs again on the day set for hearing dismissed their suit without trial. That the defendants threaten again to sue plaintiff for possession of said lands unless he will make them what he calls a fair proposition to buy from them a quitclaim deed of their alleged rights, title or interest in or to said land.

Porter v. Reed.

"That the sole claim of the defendants to any right, title or interest in said land arises from the foregoing fact that they are the illegitimate children of Henry Miller and Fanny Russell; and their said suits are vexatious and harassing to plaintiff and injurious and a cloud to his title; for which plaintiff has no remedy except by decree in equity. It is therefore ordered, adjudged and decreed that defendants and each of them be forever barred estopped and enjoined from having or claiming or pretending to have or claim any right, title or interest in or to said lands, hereinbefore described, or any part thereof by virtue of their said alleged relationship to Henry Miller, deceased, or as heirs of Henry Miller, deceased, and that defendants and each of them be, and they are enjoined and prohibited from instituting or prosecuting any further suit against plaintiff or his grantees of said lands, or any part thereof on the ground that defendants are heirs or relatives of said Henry Miller, deceased, or as holding from him any interest therein and that the title of plaintiff obtained as aforesaid, from the legal heirs of Henry Miller and Elizabeth Miller be quieted and affirmed and decreed a perpetual bar to defendants, and the plaintiff recover of defendants, his cost in this behalf expended and have therefor execution."

On the twenty-third day of March, 1892, the plaintiffs in error herein sued out a writ of error from this court, and duly notified the defendant in error, and assign the following errors:

*First.* The court erred in rendering a decree on the allegations of the petition, for the reason that plaintiffs in error had never prosecuted a suit in ejectment to verdict.

*Second.* The court erred in rendering a decree against the married women, for the reason that they

had not the right of possession or the power to sue for same.

*Third.* The court erred in rendering the decree for the reason that the allegations of the petition make it appear that plaintiffs in error have no claim which if based on facts would be valid in law.

As every allegation in the bill stands confessed for the purposes of this hearing, we have this case made:

Henry Miller the common and admitted source of title died seized and possessed of the lands in suit about January 1, 1859, leaving as his widow Elizabeth Miller and his children, Hiram, Henry C., James W., John D, and Ann Miller, as his only heirs at law.

These heirs in 1867 sued plaintiffs in error for this land, and on a jury trial wherein the sole issue was the legitimacy of said heirs, had a verdict; defendant in error, in 1872, by deeds, obtained all the title of said heirs to said land, and has ever since been in actual possession thereof; for eighteen years after said verdict, plaintiffs in error "never made any pretense of claim to the land." Plaintiffs in error only claim title by the assertion that they are the lawful heirs of Henry Miller, deceased, through his connection with their mother, Fanny Russell, which has been once in a jury trial decided against them. Their said mother repudiated their claim by filing her account and claim, in her own proper name of Fanny Russell in the probate court of Jackson county, Missouri, against the estate of Henry Miller, deceased; the connection, through which they claim, was "illegitmate and adulterous." The marriage of Henry Miller and Elizabeth Miller, through whom defendant in error claims, in Ashe county, North Carolina, in 1818 or 1819, and the magistrate who married them, and all of the witnesses, are dead. The depositions taken at the trial in 1869, and used against plaintiffs in error in case number 7380 of the circuit

Porter v. Reed.

court, to establish the legitimacy of the grantors of defendant in error, disappeared "shortly prior to the bringing of their suit" in 1887, to disturb this title. All other evidence of the relations of Henry Miller, deceased, has been lost, or is about to be lost, by time; two vexatious and inconsequent suits were brought and others threatened by plaintiffs in error and defendant in error is seriously damaged in his possession, and without other remedy.

There are five distinct parties, each of whom, may separately renew the litigation over this title whenever, and as often as they see fit, unless a court of equity has jurisdiction under these circumstances to entertain a bill to have the title finally tried and prevent a multiplicity of suits. It is true that one of the tests made by plaintiffs in error of a bill of peace does not exist, in that they have not twice been defeated on a final hearing in their ejectment suits, but, on the other hand, there has been a final judgment in ejectment in favor of Porter's grantors. By virtue of that judgment he was placed in possession, and his possession remained unchallenged from 1872 until 1887, when this controversy was renewed. Since then two actions have been commenced by plaintiffs in error only to be dismissed after all the costs had accrued, and Porter had announced ready for trial.

When it appeared to defendant in error that he could not obtain a final decision on their suits, he took the initiative, by instituting a suit they could not dismiss. They suffered him to proceed to final judgment without objection, and permitted the judgment to remain unchallenged until this writ of error was sued out. As two of the plaintiffs in error labor under the disability of coverture the limitation does not bar them, and this title may be clouded for years to come. The defendant in error is in possession, and is without

remedy, unless a court of chancery can prevent such vexatious litigation.

When the title has been fairly tried in a court of competent jurisdiction and the possession taken thereunder, and held in peace for many years, and then is challenged by a large number, all claiming under a common title, it would be inequitable and unjust to compel the party in possession to litigate with all these claimants separately. The jurisdiction is established by the great weight of LORD HARDWICKE in *Tenham v. Herbert*, 2 Atk. 483, and by LORD CHIEF BARON GILBERT, "Forum Romanum," p. 195, and since maintained in England and America. We have no question about the sufficiency of the bill, and no doubt about the jurisdiction in chancery to bind the married women who are plaintiffs in error. Their claim that they are not in default, because under coverture, ill comports with the fact that they have already brought two suits, and threaten others, and strengthens the ground for equitable jurisdiction because of their disability. The question is are they proper defendants in equity to restrain them from a multiplicity of actions, and of this we have no doubt. *Staley v. Ivey*, 65 Mo. 74; *Pratt v. Eaton*, 65 Mo. 157; *Morrison v. Thistle*, 67 Mo. 596; *Clark v. Rynex*, 53 Mo. 380.

The final assignment is without merit. It is this, that if plaintiff's petition be true, then the claim of defendants below, plaintiffs in error here, would constitute no cloud on the title of the plaintiff. Plaintiffs in error claim that they are the lawful heirs at law of Henry Miller; if this were true, they have a valid right to these lands. The petition controverts their claim, and states the disproving facts.

Certainly if plaintiffs in error admit that they are not the heirs of Henry Miller they can urge no reason why they should longer harass the defendant in error,

in his possession and ownership, as that is their sole claim.

We think the circuit court had complete jurisdiction over the subject-matter, and the plaintiffs in error, and that the petition stated a strong case for the interference of a chancellor, and no error appearing in the record, the judgment of the circuit court is affirmed. BURGESS and SHERWOOD, JJ., concur.